UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAYDEN CHAMBERS,<br>Plaintiff,<br>v.<br>NATIONAL COLLEGE ATHLETIC ASSOCIATION (NCAA); UNIVERSITY OF SAN DIEGO (USD); and DOES 1-10, inclusive,<br>Defendants. | Case No.: 26-cv-2275-JES-JLB<br>**ORDER GRANTING MOTIONS TO DISMISS**<br>**[ECF Nos. 41, 43]** |

*Pro se* plaintiff Cayden Chambers ("Plaintiff") brings this action against the University of San Diego ("USD") and the National College Athletic Association ("NCAA") (collectively, "Defendants"). ECF No. 35, First Amended Complaint ("FAC"). Before the Court are motions by both defendants to dismiss this action. ECF Nos. 41, 43. For the reasons set forth below, the Court **GRANTS** the motions.

## I. BACKGROUND

Plaintiff is a young man who has played college football and alleges that Defendants improperly found him ineligible to continue competing. FAC ¶¶ 133-138. Plaintiff has Autism Spectrum Disorder/ Asperger's Syndrome, a neurodevelopmental disability which affects communication and the ability to process complex administrative matters. *Id.* ¶ 64.

The NCAA is an association that establishes and enforces rules governing student-athlete eligibility, participation, and waiver processes for its member institutions. *Id.* ¶¶ 60-63. These rules typically give players five total years in which they are eligible to compete in up to four seasons of football. ECF No. 35-5 at 34; ECF No. 43-1 at 5. NCAA has a waiver process, by which a particular season can be waived for reasons like medical hardship, thus extending eligibility. *See* FAC ¶¶ 9, 85; ECF No. 43-1 at 9.

Plaintiff played football at Mt. San Jacinto College in the 2019 to 2020 season. ECF No. 35-5 at 7; ECF No. 43-1 at 8. Plaintiff began the 2020-21 season at Mt. San Jacinto College, but was unable to compete due to COVID-19. *Id.* NCAA offered a waiver of the 2020-21 season to all players as a result of COVID-19, which meant the 2020-21 season would not count towards his student-athlete eligibility. *Id.* Plaintiff subsequently competed in the 2021-22 season at Mt. San Jacinto College. *Id.*

Plaintiff then transferred to Concord University, where he competed in the 2022-23 season. *Id.* During the following year, 2023-24, Plaintiff began the season but was injured midway through. *Id.* The NCAA found that he qualified for a medical hardship waiver, which meant that the 2023-24 year would not count toward his student-athlete eligibility. *Id.*

Plaintiff subsequently transferred to USD. *Id.* During the transfer process, Plaintiff and USD discussed his future eligibility and a potential waiver of his 2024-25 season for medical hardship. *Id.* ¶ 85. Plaintiff included his Asperger's Syndrome diagnosis on his "New Student Athlete Medical Form" for USD, which he submitted on July 17, 2024. ECF No. 35-2.

On August 2, 2024, Plaintiff was evaluated for a hip injury by USD training personnel. FAC ¶ 103. Plaintiff did not compete for the beginning of the 2024-25 football season, but played two games at the end of the season after he was cleared for competition. ECF No. 35-5 at 7; ECF No. 43-1 at 8.

On July 26, 2025, Plaintiff learned that his eligibility extension waiver had not been approved, jeopardizing his participation in the 2025-26 season. FAC ¶ 85. Plaintiff

communicated with USD about the waiver denial. *Id.* ¶¶ 86-87. USD requested reconsideration of Plaintiff's extension waiver denial, which the NCAA denied. *Id.* ¶ 88. USD informed Plaintiff of the denial on July 18, 2025. *Id.*

Plaintiff contacted the NCAA about the waiver denial. *Id.* ¶ 89. The NCAA explained that requests must be submitted through member institutions, and mentioned a new theory of waiver. *Id.* Plaintiff reached back out to USD, who advised Plaintiff that they believed that new theory would not be accepted for Plaintiff. *Id.* ¶ 92. USD told Plaintiff that it would take no further action regarding his eligibility concerns, and that his further communications should be directed to USD's Office of General Counsel. *Id.* ¶ 97.

Plaintiff alleges that records of when he was cleared for competition are inconsistent, leading to issues in his waiver evaluation process. *Id.* ¶¶ 109-113. Plaintiff alleges that Defendants relied on dates for his medical clearance that were not properly documented to determine his eligibility and failed to communicate with him about his status despite his reliance on prior representations. *Id.* ¶¶ 123-138. Plaintiff alleges that Defendants discriminated against him by failing to engage in an interactive process and instead applying rigid screening criteria that excludes athletes with neurodevelopmental disabilities *Id.* ¶ 144.

Plaintiff initially brought suit on these allegations on April 10, 2026. ECF No. 1. The Court *sua sponte* dismissed the initial complaint for lack of jurisdiction because the parties are not diverse and the complaint did not facially assert a federal claim. ECF No. 34.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Federal Rule 15(a) provides that a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A district court has discretion to deny leave to amend when a proposed amendment would be futile. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725-26 (9th Cir. 2000). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In other words, if allowing a party to amend its pleading would be futile, district courts properly decline to grant leave to amend. *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

## III. LEGAL ANALYSIS

Plaintiff brings six causes of action: (1) a claim arising under Title III of the Americans with Disabilities Act ("ADA") against USD and NCAA; (2) violation of

Section 504 of the Rehabilitation Act against USD; (3) a claim for declaratory and injunctive relief under the ADA and section 504 against both defendants; (4) violation of California's Unruh Civil Rights Act against both defendants; (5) breach of contract against USD; and (6) a retaliation and coercion claim under Title V of the ADA and section 504 of the Rehabilitation Act. The Court analyzes Plaintiff's federal claims below.

**A. Title III of the ADA**

Defendants argue that Plaintiff has not stated a claim under the ADA because he has not plausibly alleged a reasonable accommodation that he was denied. ECF Nos. 41 at 15, 43 at 3. The Court agrees.

To state a claim under Title III of the ADA, Plaintiff must allege non-conclusory facts showing that: "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). To show the third element, a plaintiff must allege that the defendant "discriminated against him by failing to make a reasonable modification in 'policies, practices, or procedures,' necessary to accommodate his disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

Here, Plaintiff argues that Defendants failed to provide reasonable accommodations in supporting his NCAA waiver process, which he characterizes as a lack of an interactive process. FAC ¶¶ 9, 160-75. At the motion to dismiss stage, the Court disregards the allegation that Defendants did not provide accommodations as conclusory, and looks instead to the factual allegations underlying that claim. *See Iqbal*, 556 U.S. at 679. Plaintiff repeatedly alleges inconsistencies in records and communications, misrepresentations by Defendants, and obstacles to contacting the parties he wanted to contact at various times concerning his waiver. *See generally,* FAC. While Plaintiff alleges these issues amount to a failure to provide an interactive process, Title III of the ADA does not create a claim for lack of interactive process. *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 964

(9th Cir. 2019). Further, the FAC details a number of communications that did occur between the parties about Plaintiff's waiver denial. *Id.* ¶¶ 85-97. Plaintiff makes a number of allegations related to the process, but his narrative account describes an unfair process, not a discriminatory one that could have been remedied by accommodation. *See generally,* FAC. Because Plaintiff has not plausibly alleged that either Defendant discriminated against him by failing to make a reasonable accommodation for his disability, he has not stated a claim under the ADA. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d at 1082. Defendants' motion to dismiss Plaintiff's ADA claim is therefore **GRANTED**.

**B. Rehabilitation Act**

USD argues that Plaintiff has failed to state a claim under section 504 of the Rehabilitation Act because he has not plausibly alleged a USD program or benefit which he was otherwise qualified for but denied participation in on the basis of his disability. ECF No. 41 at 18. The Court agrees.

To state a claim under section 504 of the Rehabilitation Act, a plaintiff must show that he was excluded from a federally funded program solely on the basis of a disability. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). To do so, the plaintiff must allege deliberate indifference, meaning "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Id.* at 1139.

Here, Plaintiff alleges that USD denied him access to the NCAA waiver and eligibility process. FAC ¶ 170. However, as discussed above, the FAC and its attachment show that USD did communicate with the NCAA on Plaintiff's behalf, including appealing the denial of his waiver. *Id.* ¶¶ 92-93. Plaintiff's complaints about inconsistencies in USD's communications about the waiver process do not amount to deliberate indifference because they do not show that USD failed to act, or excluded him from any process. *See Duvall*, 260 F.3d at 1139. The motion to dismiss Plaintiff's Rehabilitation Act claim is therefore **GRANTED**.

//

**C. Declaratory and Injunctive Relief**

Declaratory and injunctive relief claims fail if there is no underlying causes of action. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Plaintiff's claims for declaratory and injunctive relief here arise from his ADA and Rehabilitation Act claims, which fail for the reasons set forth above. *See* FAC ¶¶ 176-181. The motions to dismiss Plaintiff's claim for declaratory and injunctive relief are therefore **GRANTED**.

**D. Retaliation and Coercion Claims**

USD argues that Plaintiff's sixth cause of action for retaliation and coercion under the ADA and Section 504 fails because Plaintiff has not pled retaliatory action. ECF No. 41 at 26. The Court agrees.

To state a claim for retaliation, a plaintiff must show that a defendant took an adverse action—retaliation, interference, coercion, or intimidation—against him because of the exercise of his rights under the ADA. 42 U.S.C. § 12203(a); *Brown v. City of Tucson*, 336 F.3d 1181, 1186-88 (9th Cir. 2003).

Here, Plaintiff alleges that USD retaliated against him for raising claims under the Family Educational Rights and Privacy Act ("FERPA") by asserting its disagreement with his position on FERPA compliance and banning Plaintiff's parents from coming to USD campus. FAC ¶¶ 176-181. In the context of the other allegations in the complaint, Plaintiff has not alleged any facts plausibly showing that the disagreement between the parties about the University's responsibility to communicate with his parents constitutes retaliation, interference, coercion, or intimidation, rather than a good faith dispute at a litigious stage of communications. *See* ECF No. 35-5 at 56-57 (communications between Plaintiff's mother and USD employees concerning the FERPA dispute); ECF No. 35-4 at 16-17 (letter explaining that Plaintiff's parents continued communications with other USD offices after being instructed to only contact USD general counsel and banning Plaintiff's parents from coming to campus without clearance from USD general counsel); *Iqbal*, 556 U.S. at 679. Thus, under federal pleading standards, Plaintiff has not stated a claim for retaliation under

the ADA. *See Iqbal*, 556 U.S. at 679. The motion to dismiss Plaintiff's retaliation claim is therefore **GRANTED**.

**E. Leave to Amend**

Regarding leave to amend, the Court notes Plaintiff's *pro se* status and the civil rights framing of the federal claims. However, the procedural history of this case also reflects that disability discrimination is not the core of Plaintiff's claims but a pleading modification to attempt to stay in federal court. At the initial hearing in this case, the Court explained to Plaintiff that his complaint was subject to dismissal because the parties were not diverse and the complaint only stated state law claims sounding in contract law. *See* ECF No. 1 (initial complaint alleging only state law causes of action). However, the complaint did mention the ADA and Rehabilitation Act in passing (not in a claim), and alleged that Plaintiff had a disability. *Id.* Out of an abundance of caution, the Court asked Plaintiff if he would be able to state a claim under those statutes if granted leave to amend, cautioning Plaintiff as to the elements of those claims. Because Plaintiff answered in the affirmative, the Court granted Plaintiff leave to amend should he be able to state a claim under one of those federal statutes. ECF No. 34. However, upon review of the FAC and the briefing in this matter, it is apparent that Plaintiff cannot allege facts to show these claims under federal pleading standards. The amended complaint attempts to create jurisdiction by adding conclusory allegations of discrimination to state law claims. But conclusory allegations are insufficient to state a claim in federal court. In consideration of the above, the Court finds that leave to amend would be futile. The Court thus **GRANTS** Defendants' motions to dismiss Plaintiff's federal claims with prejudice. *See Chappel,* 232 F.3d at 725-26.

**F. Supplemental Jurisdiction**

Because the Court dismisses Plaintiff's federal claims, it must next decide whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Courts may exercise supplemental jurisdiction over state law claims arising from a common nucleus of facts to federal claims, but have the discretion to deny supplemental

jurisdiction as well. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (internal citations omitted). Federal courts regularly decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed. *Union Block Assocs., LLC v. Keane*, No. 1:24-CV-00038-DCN, 2026 WL 883634, at *14 (D. Idaho Mar. 31, 2026) (collecting cases).

Here, all of Plaintiffs federal claims have been dismissed. Further, as explained above, the context of the case shows a risk of artful pleading for the purpose of obtaining federal court jurisdiction, and not based upon the facts of the case. The Court thus exercises its discretion to **DENY** supplemental jurisdiction over the remaining state law claims, and **DISMISSES** the case in its entirety. The Court's dismissal of Plaintiff's state law claims is without prejudice.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the motions to dismiss Plaintiff's first, second, third, and sixth claims with prejudice. As all federal claims are dismissed, the Court **DENIES** jurisdiction over the remaining state law claims, and **DISMISSES** the FAC in its entirety. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 11, 2026

Honorable James E. Simmons Jr.
United States District Judge